1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11

DHIRAJ KUMAR,

Case No.  1:21-cv-01591-SAB

12

Plaintiff,

ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL

13

v.

(ECF Nos. 15, 16)

14

COMMISSIONER OF SOCIAL SECURITY,

15

Defendant.

16

17

18

19

## I.

20

## INTRODUCTION

21

Plaintiff Dhiraj Kumar ("Plaintiff") seeks judicial review of a final decision of the

22

Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

23

disability benefits pursuant to Title II of the Social Security Act.  The matter is currently before

24

the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge

25

Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied.

26

///

27

28

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 8, 9, 10.)

1

2

## II.

## BACKGROUND[2]

3      Plaintiff filed an application for disability under Title II of the Social Security Act on July

4   7, 2020, alleging disability beginning August 29, 2019, due to degenerative disc disease of the

5   lumbar spine and obesity.  (Admin. Rec. ("AR") 153–54, 169–76, ECF No. 11-1.)  At the time

6   Plaintiff's application was filed, Plaintiff was twenty-six years old, had a college degree from

7   California State University, Bakersfield (2014), was able to communicate in English, and had

8   previously worked as a financial analysis for a construction engineering company, a logistics

9   specialist for an oil company, and a staff accountant for a taxation and auditing company.  (See

10  AR 169, 171, 186.)

11     Plaintiff's claim was initially denied on August 18, 2020, and denied upon reconsideration

12  on October 20, 2020.  (AR 92–95, 97–101.)  On April 22, 2021, Plaintiff appeared via telephonic

13  conference, due to the extraordinary circumstance presented by the Coronavirus pandemic, for a

14  hearing before Administrative Law Judge Katherine Loo (the "ALJ").  (AR 44–72.)  Plaintiff

15  elected to represent himself at the hearing.  (See AR 53.)  On May 3, 2021, the ALJ issued a

16  decision denying benefits.  (AR 27–43.)  On August 27, 2021, the Appeals Council denied

17  Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

18  (AR 11–16.)

19     Plaintiff initiated this action in federal court on October 28, 2021, and seeks judicial

20  review of the denial of his application for benefits.  (ECF No. 1.)  The Commissioner lodged the

21  operative administrative record on February 17, 2022.  (ECF No. 11.)  On May 31, 2022, Plaintiff

22  filed an opening brief.  (ECF No. 15.)  On July 13, 2022, Defendant filed a brief in opposition.

23  (ECF No. 16.)  No reply brief was filed and the matter has been deemed submitted.

24  ///

25  ///

26  ///

27

28

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

**III.**

**LEGAL STANDARD**

**A.      The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).   The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.   20 C.F.R. § 404.1520;[4] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).   The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[4] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only disability benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e);  Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[5]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a vocational expert ("VE").  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

---

[5] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may review only the reasons stated by the ALJ in her decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

5

1    for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

2    the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

3    400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**SUMMARY OF RELEVANT RECORD**

**A.    Hearing Testimony**

At the April 22, 2021 hearing, Plaintiff testified he is unable to work due to left

paracentral disc protrusion.  (AR 54.)  He complained of low back pain twenty-four hours a day,

seven days per week, that limits his ability to lift heavy objects, sit, bend, walk, and run.  (AR 53–

55, 58.)  He disclosed that his weight is 235 pounds and height is 5'8".  (AR 59.)  Plaintiff

testified he did not undergo any nerve conduction studies but that he had a weakening on the left

side.  (AR 54–55.)  He claimed his legs feel fatigued and numb, but he denied using a cane or

walker, suffering any falls, or being hospitalized due to his back.  (AR 53–55.)  Plaintiff testified

that he tried some physical therapy ("PT") but it was ineffective; he also testified to receiving

chiropractic treatment.  (AR 56, 59–60.)  Plaintiff testified that, in September 2020, Dr. Wahba

diagnosed him with left paracentral disc protrusion, stenosis, and degenerative disc disease, and

that Dr. Wahba told him that there was no treatment option available for him except surgery.  (AR

53–54, 59.)  However, Plaintiff also testified that Dr. Wahba referred him to pain management

and recommended epidural injections, but that Plaintiff elected not to pursue those options.  (AR

65.)  Plaintiff vaguely testified that he suffered from "the major pain that comes with this

diagnosis of degenerative disc disease, lack of sleep, mental stressors, [and] physical stressors";

however, Plaintiff acknowledged he did not seek mental health treatment.  (AR 70.)  Plaintiff

denied any referrals for (or receiving) in-home care support, stating "that's why I have my family

to cook and clean and help me while I'm just sleeping most of the day."  (AR 70–71.)  Plaintiff

denied taking any pain medication; he testified that he was dealing with the pain and hoping

things would get better naturally, and that he prefers that his treatment be organic.  (AR 55.)

Plaintiff claimed he could only drive a car for ten to fifteen minutes, could not perform gardening

tasks, can only occasionally carry groceries, is only able to lift items that weigh less than ten

1    pounds, is limited to walking about ten to fifteen minutes, and spends most of the day in bed

2    resting.  (See AR 59.)

3         Plaintiff's sister-in-law, Monica Arora also testified that Plaintiff was always in pain, and

4    spent all day in bed.  (AR 61–63.)  Ms. Arora testified that she helps Plaintiff throughout the day

5    by making him food, and Plaintiff's brother assists him in going to the restroom.  Ms. Arora

6    further testified that Plaintiff did not go to PT due to COVID-19.  (AR 63.)

7         Impartial VE Randi Langford-Hetrick also testified at the hearing.  The ALJ presented a

8    number of hypotheticals.  The first hypothetical concerned an individual Plaintiff's age and with

9    Plaintiff's education and past work, who was limited to light work except he could occasionally

10   climb ramps and stairs, stoop, kneel, crouch and crawl, could not climb ladders, ropes and

11   scaffolds, could not work at heights or around hazards, only occasionally push and pull with the

12   bilateral lower extremities, must avoid concentrated exposure to extreme temperatures, and was

13   limited to simple, routine tasks due to pain.  (AR 67.)  The VE testified Plaintiff's past work

14   would not be available to this individual, but that the individual could perform work such as

15   office helper (DOT 239.567-010), routing clerk (DOT 222.587-038), or storage facility clerk

16   (DOT 295.367-026).  (AR 67–68.)

17        The second hypothetical concerned an individual who could perform sedentary work,

18   except he could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; could not

19   climb ladders, ropes and scaffolds, work at heights or around hazards, could occasionally push

20   and pull with the bilateral lower extremities, and must avoid concentrated exposure to extreme

21   temperatures.  The VE testified this hypothetical individual could perform the full range of

22   unskilled sedentary work, including examples such as order clerk, food and beverage (DOT

23   209.567-014), charge account clerk (DOT 205.367-014); or assembler jobs, such as final

24   assembler (DOT 713.687-018).  (AR 68.)

25        The third hypothetical involved an individual who was limited to simple, routine tasks.

26   The VE testified that individual could perform all unskilled work.

27        The final hypothetical involved the same individuals from the first and second

28   hypotheticals, but with the limitation that he was unable to maintain a normal workday or

7

1   workweek at least 20% of the time due to pain.  The VE testified there would not be any work

2   available for the individual under either of these circumstances.  (AR 68–69.)  Finally, the VE

3   confirmed none of her testimony was inconsistent with the DOT.  However, she testified the DOT

4   does not address pushing and pulling with feet and it does not address time off task; as to those

5   limitations, the VE based her testimony on a combination of job descriptions, and her background

6   and experience as a vocational rehabilitation counselor.  (AR 69.)

7   **B.    Medical Records**

8   In August and November 2018, prior to the alleged date of onset of disability (Aug. 29,

9   2019), Plaintiff was treated for a cough.  (AR 260–61, 264–66.)  At that time, Plaintiff weighed

10  225 pounds at a height of 68 inches.  His blood pressure was 115/75 in August, and 123/85 in

11  November.  The physical examinations for both appointments were normal.  A review of systems

12  was negative except for a cough; Plaintiff was oriented in all areas; respiration and cardiovascular

13  systems were normal.

14  In June 2019, Plaintiff complained of neck and lower back pain.  (AR 411–14.)  X-rays

15  taken at that time showed minimal scoliotic curvature.  The lumbar vertebral body heights and

16  disc heights were preserved.  The cervical spine scan yielded normal height and alignment.

17  In September 2019, Plaintiff was assessed with segmental and somatic dysfunction of the

18  lumbar region, myofascial pain, osteoarthritis, degenerative joint disease, and spinal stenosis.

19  Plaintiff complained his pain was 4–5 out of 10, and pain was only present 50% of the day but

20  could elevate to an 8/10.  (AR 290, 292–94.)  Plaintiff reported he has a sitting job and works out

21  in a gym regularly.  A physical examination revealed Plaintiff's pain was local with no radiation

22  to the lower extremities; he had no sensory changes or motor changes; he had no problems with

23  balance or coordination; no ABD pain, flank pain or hematuria; gait was normal and without

24  steppage; his range of motion had improved; his muscles were less taut and his symptoms had

25  decreased.

26  October 2019 x-rays (4-views) of Plaintiff's back showed no fractures, no transitional

27  changes, no osteopenia or inflammatory changes, no significant degenerative changes or

28  spondylosis, no significant scoliosis, and no vertebral malignment.  (AR 371.)

In February 2020, Plaintiff was seen in PT for lower back pain over the mid back and lower back region.  (AR 373, 374.)  He had no radicular symptoms.  Pain reportedly varied throughout the day, and was aggravated by running, heavy weightlifting, bending, and putting on his shoes and socks; whereas, easing factors included standing, walking, and lying flat.  Plaintiff's PT prognosis was "good."  In total, Plaintiff attended seven PT sessions between February and March 2020.  (AR 433, 436, 439, 442, 445, 448, 451.)  The PT records indicate some improvement, but Plaintiff reported he was limited in his ability to perform heavy lifting tasks, regular activities and workouts.  The prognosis for PT remained "good," and treatment notes indicate Plaintiff tolerated manual therapy well with a decrease in symptoms.

July 2020 records indicate Plaintiff was referred for an orthopedic evaluation, but it was postponed due to COVID-19.  (AR 367.)  Plaintiff complied he could not sit for too long at one time because it exacerbated his pain.

On September 3, 2020, Plaintiff was treated by George Wahba, M.D.  (AR 424–26.)  Plaintiff complained of lower back pain at an 8 out of 10.  Plaintiff reported the pain was worse with exercising and sitting, and alleviated with rest, heat and cold, and sitting; he reported the pain has ongoing for about three years.  Plaintiff also complained of intermittent numbness, tingling and weakness in the lower extremities.  His reported treatment modalities included NSAIDs, chiropractic treatment, and PT.

The physical examination revealed Plaintiff was in no acute distress.  His gait was steady; no mobility device was required; Plaintiff was able to toe walk, heel walk, tandem walk, and his posture was normal.  He had pain with flexion of the lumbar spine but his hips had normal range of motion without pain.  The neurological examination yielded results that Plaintiff's motor strength was 5/5 in the lower extremities with normal sensation to light touch; straight leg raise was negative.  Dr. Wahba noted Plaintiff had some weakness in the left foot, but felt that it was stable.

Dr. Wahba noted that x-rays taken that day revealed mild degenerative changes at L4-L5 with no evidence of instability on flexion/extension views and no obvious pars defect on oblique views.

Dr. Wahba reviewed an MRI of Plaintiff's lumbar spine, taken March 14, 2020.  He found the MRI showed underlying congenital stenosis.  At L4-L5, there was a broad disc bulge with left paracentral disc protrusion contributing to moderate to severe stenosis with severe lateral stenosis on the left side and mild to moderate foraminal stenosis.  At L5-S1, there was a small central disc bulge with mild central stenosis.

Dr. Wahba assessed Plaintiff with protrusion of lumbar intervertebral disc, lumbar stenosis, and lower back pain.  He referred Plaintiff to pain management for a left transforaminal epidural injection at L4-L5.  Alternatively, Dr. Wahba recommended surgery, but stressed to Plaintiff the goal of the surgery would be to address the stenosis, which may be contributing to neurologic low back pain, intermittent radiculopathy, and left sided extremity weakness; and cautioned there was a possibility of permanent nerve damage already being present, given Plaintiff's reportedly longstanding symptoms.  Plaintiff indicated he was interested in trying the epidural injections, but wanted to hold off on surgical intervention.

**C.     Prior Administrative Findings**

At the initial level of review, State reviewing physician L. Tanaka, M.D. reviewed all of Plaintiff's medical records through August 14, 2020.  (AR 76–77.)  In particular, he reviewed Plaintiff's March 14, 2020 MRI, which showed L4-5 mild disc desiccation with preservation of height, shallow disc bulge, left disc protrusion, moderate-severe left lateral recess stenosis; and L5-S1 mild canal stenosis.  (AR 77.)  Dr. Tanaka concluded Plaintiff's symptoms were partially consistent with the medical and non-medical evidence, particularly in light of the minimal evidence of significant functional limitation in the record.  (AR 77–78.)  He opined Plaintiff could occasionally lift/carry/pull up to 50 lbs; could frequently lift/carry/pull up to 25 lbs; could stand and/or walk up to six hours in an eight-hour workday and sit up to six hours in an eight-hour workday; could always push/pull hand and foot controls; and had no postural, manipulative, visual, communicative, or environmental limitations.  (AR 78–79; see also AR 86 (referred to as "medium RFC").)  Dr. Tanaka further determined Plaintiff's limitations would not prevent him from performing his past relevant work as a logistics specialist, as the position was actually performed.  (AR 79.)

On reconsideration, State Reviewing Physician G. Dale, M.D. reviewed Plaintiff's medical and non-medical evidence on file through October 13, 2020. (AR 86.) In particular, Dr. Dale considered Dr. Wahba's medical treatment notes dated September 3, 2020, which Plaintiff claimed demonstrated a worsening of his medical condition, and worsening pain. (AR 83, 86.) Plaintiff claimed x-rays taken on September 3 showed a broad disc bulge at L4 and L5, associated with left paracentral lumbar disc protrusion contributing to severe central stenosis with severe lateral recess stenosis on the left side, and mild to moderate foraminal stenosis; at L5-S1, a small central disc bulge contributing to mild central stenosis. Plaintiff claimed this was also causing weakness in his left leg and foot. He indicated he was referred to a pain management specialist for epidural injections and that surgical options were also recommended. (AR 83.) In reviewing the records, Dr. Dale found the x-rays indicated in the September 3, 2020 treatment notes yielded "mild degenerative changes L4-5," and showed Plaintiff had a normal gait, was able to heel/toe/tandem walk, normal strength at 5/5, all sensations intact, and some pain with range of motion. (AR 86.) While Plaintiff complained of worse pain, Dr. Dale noted Plaintiff declined to follow through with the pain management referral. Dr. Dale also noted records showing "paraspinal TTP, LS with pain with flexion." Based on his cumulative review of records, Dr. Dale opined the RFC for medium work was appropriate. (AR 86–87.)

**D.      The ALJ's Decision**

The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.1520. (AR 31–39.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 29, 2019, the date of his application. (AR 32 (citing 20 C.F.R. §§ 404.1571 et seq.).) At step two, the ALJ found Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine (stenosis) and obesity. (Id. (citing 20 C.F.R. § 404.1520(c)).)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (AR 33.) More specifically, the ALJ considered the applicable Listings of Impairments ("listings") of 1.15 and 1.16 and determined Plaintiff does not meet Listing 1.15 (disorders of the skeletal spine resulting in compromise of a

nerve root(s)) because the record did not demonstrate neuro-anatomic (radicular) distribution of pain, or paresthesia, or muscle fatigue consistent with compromise of the affected nerve root(s), or other symptoms consistent with this Listing.  (Id.); see 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Similarly, the ALJ determined Plaintiff does not meet Listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina) because there is insufficient evidence of symptoms of neurological compromise manifested as a nonradicular distribution of pain in one or both lower extremities, such as neurogenic claudication and nonradicular neurological signs present during physical examination or on a diagnostic test and evidenced by muscle weakness and either sensory changes evidenced by decreased sensation or sensory nerve deficit on electrodiagnostic testing; reflexes or bladder or bowel incontinence; decreased deep tendon reflexes in one or both lower extremities; medical documentation of need for a walker, bilateral canes, crutches, or a wheeled and seated mobility device; an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements; or a documented need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand.  (AR 33.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except he can only:

> **occasionally climb ramps and stairs, kneel, crouch and crawl; never climb ladders, ropes or scaffolds; never work at heights or around workplace hazards; occasionally push and pull with the bilateral lower extremities; avoid concentrated exposure to extreme temperatures and simple, routine tasks due to pain.**

(AR 34 (citing 20 C.F.R. §§ 404.1567(b), 404.1529, 404.1520c, and SSR 16-3p, available at 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (AR 38 (citing 20 C.F.R. § 404.1565).)   At step five, considering Plaintiff's age, education, work experience and RFC, and the VE's testimony, the ALJ determined Plaintiff could perform jobs existing in significant numbers in the national economy, specifically the jobs of

(1) Office Helper (Dictionary of Occupational Titles ("DOT") 239.567-010, light exertional level and specific vocational preparation ("SVP") 2 rating, with approximately

32,000 positions available in the national economy);

(2) Routing Clerk (DOT 222.587-038, light exertional level and SVP 2 rating, with approximately 49,000 positions available nationally); and

(3) Storage Facility Clerk (DOT 295.367-026, light exertional level and SVP 2 rating, with approximately 45,000 positions available in the national economy).

(AR 38–39 (citing 20 C.F.R. §§ 404.1569, 404.1569(a)).)  Therefore, the ALJ found Plaintiff was not under a disability at any time since August 29, 2019 (alleged onset date) through May 3, 2021 (the date of ALJ's decision).  (AR 39 (citing 20 C.F.R. § 404.1520(g)).)

## V.

## DISCUSSION

Plaintiff presents two issues on appeal: (1) Plaintiff contends the ALJ failed to logically connect medical evidence to the assessed RFC and improperly interpreted raw medical data; and (2) Plaintiff contends the ALJ failed in her duty to develop the record to assess the progression of degenerative disc disease and failed to adequately inquire into all relevant facts where Plaintiff was unrepresented.  (ECF No. 15 at 2.)

### A.    Whether the ALJ Erred in Her RFC Determination

#### 1.    Legal Standard

The RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, 1996 WL 374184, at *2.  Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record.  See id.; see also 20 C.F.R. § 416.945(a)(3) (RFC determination must be "based on all of the relevant medical and other evidence.").  As previously noted, the final responsibility for determining the RFC is reserved to the Commissioner.  20 C.F.R. § 416.927(d)(2); see also Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  And where "the record contains conflicting medical evidence, the ALJ is

13

1    charged with determining credibility and resolving the conflict." Benton v. Barnhart, 331 F.3d

2    1030, 1040 (9th Cir. 2003); Batson, 359 F.3d at 1195.  In reviewing whether an ALJ committed

3    error in determining the RFC, the relevant inquiry is whether the medical evidence supports the

4    ALJ's finding.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding the

5    RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in

6    the medical opinions); see also Schneider v. Comm'r, 433 Fed. Appx. 507, 509 (9th Cir. 2011)

7    (ALJ's failure to address claimant's migraines was harmless because medical record did not

8    support finding that migraines would affect claimant's functioning at work).

9        2.    Analysis

10       Here, the ALJ properly synthesized the medical and other evidence to reach the RFC

11   determination, which is supported by substantial evidence in the record.  Biestek, 139 S. Ct. at

12   1153; Stubbs-Danielson, 539 F.3d at 1173–74.  First, the ALJ considered Plaintiff's testimony.

13   (AR 34–35 (citing AR 74, 201–03).)  The ALJ found Plaintiff's testimony and symptom

14   allegations were not fully supported due to a number of inconsistencies with the medical record.

15   (AR 34–37.)

16       For example, Plaintiff testified that he stopped working at his last job because it was a

17   two-year contract job through a staffing agency and the contract expired.  (AR 53.)  This

18   testimony conflicts with Plaintiff's claim that he stopped work due to his disability onset.

19   Plaintiff only underwent minimal PT for a month, despite some documented improvement.  (AR

20   37 (citing AR 433, 436, 439, 442, 445); see also AR 56, 60.)  On physical exam, his reported pain

21   level was 4–5 out of 10 on the pain scale.  (AR 36–37 (citing AR 290, 292–94) (Sept. 2019).)

22   Rather than the increased pain and worsening condition Plaintiff testified to, the physical

23   examination shows his range of motion improved; his pain was local without sensory changes or

24   motor changes; and his muscles were less taut and his symptoms had decreased.  (Id.)  In

25   February 2020, Plaintiff had no radicular symptoms.  (AR 36 (citing AR 373, 374).)  Despite

26   Plaintiff's claims of pain 24/7, in September 2020, Plaintiff's treating doctor noted that he

27   declined surgical intervention.  (AR 37 (citing AR 427); see also AR 57.)  Plaintiff also testified

28   that he was not under pain management—even though this was also recommended by his

doctor—and he denied taking any pain medication.  (See id.; see also AR 55–56 (Plaintiff testified to not taking medications due to fear of side effects, but admitted he has never taken medication before or experienced any side effects, and testified he was not prescribed pain medication for his back); AR 65.)  Plaintiff claimed he underwent chiropractic treatment (AR 59, 60), but this occurred prior to the alleged onset date of disability, while Plaintiff was engaged in substantial gainful activity.  (See AR 371 (noting Plaintiff reported seeing a chiropractor in May and June 2019).)  Plaintiff admittedly stopped seeking any medical treatment for his back after September 2020.  (AR 50, 59.)  Despite Plaintiff's claims of weakness in lower extremities and being unable to walk, there is no documented medical need for a walker, cane, crutches, or other mobility assistance device.  (AR 33; see also AR 55.)  Thus, the ALJ concluded Plaintiff's minimal treatment and the medical record did not support the level of limitations he alleged.  (AR 36.)  The Court has reviewed the underlying treatment records and confirms the ALJ's finding in this regard is supported by the record.

The ALJ also considered the medical opinions of State consultants L. Tanaka, M.D. and G. Dale, M.D., which she characterized as limiting Plaintiff to "less than medium exertional work" based on Plaintiff's degenerative disc disease.  (AR 37 (citing AR 73–80, 82–90).)  However, the ALJ determined these opinions were "less than fully persuasive" because at the time of their opinions, the doctors "did not have access to the September 3, 2020 MRI, only the March 14, 2020 MRI that showed moderate to severe left lateral recess stenosis."  (Id.)[6]  Thus, instead of fully adopting Drs. Tanaka and Dale's opinion that Plaintiff was capable of medium work, the ALJ added restrictions based on the reported September 2020 medical records, ultimately determining Plaintiff was capable of only light work, with the additional postural, environmental, and mental restrictions previously identified.[7]  (See AR 34.)

---

[6] The ALJ also discounted Drs. Tanaka and Dale's opinions because they did not consider Plaintiff's obese body habitus (Plaintiff weighs 225 lbs, height 68 inches), though Plaintiff does not raise this argument in his briefing. Regardless, the ALJ did consider the impact of Plaintiff's obesity, including its impact on Plaintiff's ability to perform routine movement and necessary physical activity within the work environment and sustain a function over time, and its potentially exacerbating effect on Plaintiff's subjective symptoms such as pain, and concluded the impact of Plaintiff's obesity was minimal.  (AR 37–38; see also AR 36 (citing AR 260–61, 264–66).)

[7] Pursuant to 20 C.F.R. § 404.1567:

1    In challenging the ALJ's RFC determination, the Court notes Plaintiff does not challenge

2    the ALJ's evaluation of the medical opinions, the weight the ALJ accorded to Plaintiff's

3    testimony and the lay witness testimony in light of her findings in the medical record, the ALJ's

4    step three determination that Plaintiff's impairments did not meet or equal a listed impairment, or

5    the ALJ's reliance on the VE's testimony at step five; such challenges are therefore waived.  See

6    Lewis, 236 F.3d at 517 n.13; see also Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th

7    Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's

8    opening brief" and will only "review . . . issues which are argued specifically and distinctly in a

9    party's opening brief.").

10    Instead, Plaintiff appears to assert the narrow argument that the ALJ failed to point to

11    evidence from any specific treating or examining medical professional to support her RFC

12    assessment.  (ECF No. 15 at 6.)  Thus, Plaintiff contends the ALJ impermissibly based the RFC

13    determination on her own interpretation of complex medical findings.  More specifically, Plaintiff

14    argues that the ALJ improperly considered the medical findings from his September 2020

15    appointment and MRI, which demonstrated new developments that were not considered by Drs.

16    Tanaka and Dale, and that the ALJ was not qualified to interpret on her own.  (Id. at 7–8.)  The

17    Court finds Plaintiff's arguments to be unavailing.

18    As an initial matter, the Court notes that the record contains no September 3, 2020 MRI.

19    To the contrary, Dr. Wahba's treatment notes from September 3, 2020, indicate new x-rays were

20

21    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying
articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which

22    involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.
Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
[20 C.F.R. § 404.1567(a).]

23
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects

24    weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when
it requires a good deal of walking or standing, or when it involves sitting most of the time with some

25    pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of
light work, you must have the ability to do substantially all of these activities.  If someone can do light

26    work, we determine that he or she can also do sedentary work, unless there are additional limiting factors
such as loss of fine dexterity or inability to sit for long periods of time.  [20 C.F.R. § 404.1567(b).]

27    Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects

28    weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do
sedentary and light work.  [20 C.F.R. § 404.1567(c).]

taken, but do not indicate a new MRI was taken that day.  Nor does Dr. Wahba discuss any September 2020 MRI, but instead he discussed his findings pertaining to an MRI taken on March 14, 2020.  (See AR 353–54.)  Thus, a plain review of the record indicates the relevant, and only, MRI discussed by the doctors and the ALJ is the March 2020 MRI.  Because Drs. Tanaka, Dale, and Wahba all reviewed and expressly considered the March 2020 MRI, Plaintiff's argument that the ALJ "arbitrarily substituted [her] own judgment for competent medical opinion" (ECF No. 15 at 7 (citing Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006))) and made her own independent medical findings is without merit.  Similarly, Plaintiff's claim that the pertinent MRI was not considered by Drs. Tanaka and Dale is incorrect.  Indeed, Plaintiff's claim that neither doctor reviewed Dr. Wahba's September 3, 2020 medical notes is also plainly contradicted by the record, which reveals that Dr. Dale expressly considered the September 3, 2020 treatment notes in reaching his opinion.  (AR 83, 86.)

Furthermore, the Court notes it is within the ALJ's province to synthesize the medical evidence.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti v. Astrue, 533 F.3d 1035, 1041–42 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); see also Chavez v. Colvin, 654 Fed. App'x. 374, 375 (10th Cir. 2016) (ALJ need not "parrot . . . exact descriptions of . . . limitations" to reach an RFC determination consistent with the medical record and claimant's limitations).  To the extent Plaintiff suggests otherwise, his argument is unavailing.

Moreover, as the Court noted, the ALJ fully considered the opinions of Drs. Tanaka, Dale, and Wahba in assessing Plaintiff's RFC.  She did not accord controlling weight to any single opinion or deem them persuasive because no opinion was fully supported by the medical record.  Indeed, the ALJ accorded discounted weight to the opinions of Drs. Tanaka and Dale and reached

1    an RFC determination based on the cumulative medical evidence that indicated even greater

2    limitations than those opined by Drs. Tanaka and Dale, and Plaintiff has not challenged the ALJ's

3    evaluation of these medical opinions.  Thus, for the foregoing reasons, the Court concludes the

4    ALJ properly synthesized the medical and other evidence to reach the RFC determination,

5    Biestek, 139 S. Ct. at 1153, and the RFC determination is supported by substantial evidence in the

6    record, Stubbs-Danielson, 539 F.3d at 1173–74.

7          Finally, even to the extent the ALJ erred in referring to a September 2020 MRI that did

8    not exist, it is plain that the MRI all of the doctors and the ALJ relied upon was the March 2020

9    MRI (or an MRI substantially similar to the "September 2020 MRI" as described by Plaintiff).  In

10   any event, the findings in the MRI that form the basis of Plaintiff's argument are substantially

11   similar to those discussed in Dr. Wahba's September 3, 2020 treatment notes, which are in turn

12   substantially similar to the findings discussed by Drs. Tanaka and Dale in their review of the

13   March 14, 2020 MRI, and the findings the ALJ summarizes in her decision.  (Compare AR 353–

14   54 with AR 426, AR 76–77, AR 83–87, and 36–37, respectively.)    The Court therefore finds this

15   error does not impact the ALJ's ultimate RFC determination, which was based on the cumulative

16   medical and non-medical evidence, including the March 2020 MRI, as previously discussed.  Nor

17   has Plaintiff demonstrated such error was harmful, a burden which is his.  Molina v. Astrue, 674

18   F.3d 1104, 1115–21 (9th Cir. 2012) (quoting Lewis, 236 F.3d at 503) (holding "an error is

19   harmless so long as there remains substantial evidence supporting the ALJ's decision and the

20   error 'does not negate the validity of the ALJ's ultimate conclusion.' "); Tommasetti, 533 F.3d at

21   1038 ("The court will not reverse an ALJ's decision for harmless error, which exists when it is

22   clear from the record that the ALJ's error was inconsequential to the ultimate non-disability

23   determination"); Shinseki, 556 U.S. at 409 (the burden of showing that an error is not harmless

24   "normally falls upon the party attacking the agency's determination.").

25         In sum, the Court finds the ALJ properly synthesized Plaintiff's limitations in her RFC

26   determination based on the cumulative medical and non-medical record.  Further, this Court must

27   defer to the decision of the ALJ where evidence exists to support more than one rational

28   interpretation.  Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); Burch, 400 F.3d at 679.

"As [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence." Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017).

### B.      Whether the ALJ Had a Duty to Further Develop the Record

Generally, "[t]he claimant has the burden of proving that [he] is disabled." Smolen, 80 F.3d at 1288.   However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).   However, "[w]hen a claimant is not represented by counsel, this responsibility is heightened." Id.   This is because "Social Security proceedings are inquisitorial rather than adversarial." Schiaffino v. Saul, 799 Fed. App'x 473, 476 (9th Cir. 2020) (quoting Sims v. Apfel, 530 U.S. 103, 111–12 (2000)).   In particular, the ALJ's duty to develop the record fully is heightened where the claimant may be mentally ill and thus unable to protect his own interests.   Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992)).

> The ALJ is not a mere umpire at such a proceeding, but has an independent duty to fully develop the record . . . it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.   [She] must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.

Celaya, 332 F.3d at 1183 (quoting Higbee, 975 F.2d at 561).

Nevertheless, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); see also Brown v. Berryhill, 697 Fed. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further develop the record . . . [and] the ALJ provided specific, clear and convincing reasons for finding Brown's testimony regarding his

1    symptom severity was not fully credible, including that Brown's testimony was inconsistent with

2    his daily activities.").

3         Importantly, Plaintiff does not contend that the evidence in the record was ambiguous.

4    Nor does the Court find either of the aforementioned circumstances to appear here.  Rather, the

5    Court finds the record was adequate to enable the ALJ to evaluate the evidence concerning the

6    severity of Plaintiff's symptoms.  See, e.g., Agatucci v. Berryhill, 721 Fed. App'x 614, 617–18

7    (9th Cir. 2017).  Namely, the record included unambiguous medical records that were reviewed

8    and opined on by multiple doctors, and two state reviewing physicians' opinions expressly

9    discussing Plaintiff's functional limitations.

10        Plaintiff also argues the record was incomplete or inadequate based on a host of potential

11   additional inquiries the ALJ could have made and evidence the ALJ could have sought, such as

12   ordering Plaintiff to undergo a consultative examination, and ordering additional independent

13   testing to assess the degree to which Plaintiff was limited "in light of the additional findings

14   demonstrating progression of the degenerative changes on imaging."  (ECF No. 15 at 8–9.)  But

15   these arguments are premised on the contention that the September 2020 MRI revealed new

16   conditions that were not properly considered by the state doctors or the ALJ.  As previously

17   discussed, there was no September 2020 MRI, and the March 2020 MRI that is the subject of Dr.

18   Wahba's (and the state doctors') review and consideration was also thoroughly evaluated by the

19   ALJ as part of the cumulative medical record; it therefore does not trigger a duty to further

20   develop the record.  Agatucci, 721 Fed. App'x at 617.  At bottom, Plaintiff has argued the March

21   2020 MRI demonstrates a progression of degenerative changes representing a new medical

22   condition.  Drs. Tanaka and Dale, upon reviewing the March 2020 MRI did not reach that

23   conclusion, and the ALJ, in synthesizing the cumulative medical and non-medical evidence, also

24   reached a different conclusion.  However, as the Court has discussed, the ALJ's determination

25   was based on substantial evidence in the record, and "[w]here the evidence is susceptible to more

26   than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Morgan, 169

27   F.3d at 599.

28        Similarly, Plaintiff's reference to various symptom allegations in support of his argument

20

that the ALJ was required to "probe into the relevant facts" (ECF No. 15 at 10) amounts to little more than an attempt to present a different interpretation of the evidence.  However, this is not sufficient to establish reversible error.  See Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).

Plaintiff's argument that the ALJ was required to further develop the record solely because Plaintiff was unrepresented and generally lacked the sophistication needed to request additional evidence or raise certain challenges during the hearing (see ECF No. 15 at 10–11) is also unpersuasive.  Notably, "there is no constitutional right to representation at a Social Security hearing."  Miller v. Barnhart, 33 Fed. App'x. 914 (9th Cir. 2002).  Rather, the right to counsel at a Social Security hearing is a statutory right, which may be waived.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Here, Plaintiff was thoroughly informed of his right to representation prior to the hearing (see AR 106, 109–14 (explaining benefits of and rights to representation and providing extensive list of free and contingency-fee based attorneys available to assist Plaintiff in his Social Security case)) and during the hearing (AR 49, 51), and Plaintiff— a college graduate who could well understand and speak English—affirmatively waived his right to representation and elected to proceed at the hearing without an attorney (AR 49).

In sum, a showing of unfairness or prejudice resulting from any failure to develop the record is required for remand, Graham, 129 F.3d at 1423, and Plaintiff has not made this requisite showing.  Again, the Court notes Plaintiff (through his attorney) has not challenged the ALJ's evaluation of the medical opinions, Plaintiff's testimony, the lay witness testimony, the ALJ's use of the VE's testimony, or the ALJ's step five determination.  Moreover, the Court has determined the ALJ's RFC determination is supported by substantial evidence in an ample and unambiguous record.  Accordingly, the Court will not disturb the ALJ's decision with respect to her evaluation of the medical and non-medical record and RFC determination.

## VI.

### CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.      Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF

1    No. 15) is DENIED; and

2         2.       The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant

3              Commissioner of Social Security and against Plaintiff Dhiraj Kumar and close this

4              case.

5

6    IT IS SO ORDERED.

7    Dated:   **August 31, 2022**    _____

8                                   UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28